IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES F. DEVLIN, individually and Executor of the ESTATE OF JAMES C. DEVLIN, deceased | : : : : | Civ. No. 3:12-CV-00766 |
| Plaintiff, | : : : : | (Judge Brann) |
| v. | : : | |
| THE HOME DEPOT USA, INC., | : : | |
| Defendant. | : | |

**MEMORANDUM**
December 23, 2013

Before the Court is The Home Depot USA, Inc.'s ("Home Depot" or "Defendant") Motion for Summary Judgment (ECF No. 24) on James F. Devlin and the Estate of James C. Devlin's ("Devlin" or "Plaintiff") negligence complaint. Notice Removal, Ex. A, Apr. 24, 2012, ECF No. 1. The case involves the quintessential tort scenario: a trip and fall. Devlin's Estate originally filed its complaint in state court, and the Defendant subsequently removed the matter to this Court pursuant to 28 U.S.C. § 1441. The Court has jurisdiction over the case under 28 U.S.C. § 1332.

While the Defendant's counsel was a professional and effective advocate at oral argument, the law is ultimately incompatible with his primary request. As

1

hereinafter discussed, Devlin's claim for punitive damages does not remain beyond this summary judgment, but the central tort claims do survive for trial.

I. BACKGROUND

On the afternoon of April 9, 2011, James C. Devlin arrived at a Home Depot store in Wilkes-Barre, Pennsylvania, accompanied by his daughter, Ann Marie Poepperling, and his son-in-law, Dwayne Poepperling. Def.'s Statement Material Facts ¶ 1, Aug. 22, 2013, ECF No. 25 [hereinafter Def.'s SOF]. As the party of three walked to the store, John Murray, an employee of Home Depot, operated a forklift near the entrance. Id. ¶ 7. Devlin tripped over a recumbent fork of the forklift, sustaining certain injuries.

Company policy required that a forklift operator be assisted by a spotter to help with customer safety, but the parties dispute whether a spotter was actually assisting when the accident occurred. See id. ¶ 8; Plf.'s Statement Material Facts ¶ 8, Sept. 11, 2013, ECF. No. 27 [hereinafter Pl.'s SOF]. Several Home Depot employees, namely Larry James and Operations Manager Walter Kolsea, testified to the specifics of the Home Depot's usual forklift safety procedures. See Plf.'s Br. Opp'n. Mot. Summ. J. 1–4, Sept. 11, 2013, ECF No. 28 [hereinafter Pl.'s Br.]. James further testified that on the day of the incident, he was working as a spotter for Murray while they moved pallets of concrete near the contractor's entrance. Id.

2

at 5. Murray was a licensed forklift operator for seven years. Def.'s SOF ¶ 7

As Devlin and his children approached the Home Depot contractor's entrance, James was sweeping the floor where the next pallet would be placed, while the forklift sat idle without a load on the lift. Pl.'s Br., at 6. Footage from a security camera shows that the particular fork Devlin tripped on was cast under a shadow at the time. James did not warn Devlin or his relations about the dangers of the forklift or attempt to direct them around the operation, but looked down to continue sweeping. Id. He then heard a noise and looked up to see Devlin lying on the ground after having, apparently, tripped over the forklift's fork. Id.

Devlin sustained a laceration on his left elbow and complained of pain in his left side, radiating from his hip. Def.'s SOF ¶ 40. He was removed from the scene to the Wilkes-Barre General Hospital where he was admitted for treatment. Id. ¶ 41. Devlin later died from complications from these injuries. Id.

Consequently, Devlin's estate filed a negligence suit against Home Depot asserting both Devlin's wrongful death claim and the survivor action on behalf of the family. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant previously moved to dismiss the Plaintiff's claim for punitive damages, which the Honorable Robert D. Mariani, to whom this matter was previously assigned, denied without prejudice. See Mem. Op., Oct. 25, 2012, ECF No. 10. The Court

now considers Home Depot's Motion for Summary Judgment (ECF No. 24).

## II.   DISCUSSION

### A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); <u>Chelates Corp. v. Citrate</u>, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented, "[the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. <u>In re Bressman</u>, 327 F.3d 229, 237 (3d Cir. 2003) (internal citations omitted). The moving party may meet this burden by either (1) submitting positive evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. <u>Id.</u> at 331.

If the moving party meets this burden, the non-moving party must then show

by affidavits, pleadings, depositions, and other such admissible evidence, that there is a genuine issue for trial. See FED. R. CIV. P. 56(e). This requirement is tantamount to the non-moving party making a sufficient showing for each element of its claims that a reasonable jury could find in its favor. See Chelates, 477 U.S. at 322–23. Importantly, "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (internal citation omitted).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement that there be no *genuine* issue of *material fact*." Anderson, 477 U.S. at 247–48. "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court may grant summary judgment only "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 54(a). The fact-finder is responsible for credibility determinations, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

> **B.** **The Hazard Was Not Sufficiently "Known" or "Obvious" to a Similarly Situated Reasonable Man Such that Defendant Is Entitled to Summary Judgment**

The Home Depot asserts it is entitled to summary judgment on Devlin's negligence claims because the forklift and its prone fork that caused his injuries were an open and obvious condition that relieves the Defendant of liability. Pennsylvania tort law applies to this case because it was the situs of the injury, and the case before this Court is based on diversity jurisdiction. See, e.g., Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 46 n. 11 (3d Cir. 2009) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). Pennsylvania has adopted the RESTATEMENT (SECOND) OF TORTS, § 343, pertaining to the liability of a landowner for harm caused to an invitee, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) Knows or by the exercise of reasonable care would discover the condition, and should realize that involves an unreasonable risk of harm for such invitees, and

> (b) Should expect that they will not discover or realize the danger, or fail to protect itself against it, and
>
> (c) Fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS, § 343 (1965); see also Carrender v. Fitterer, 503 Pa. 178, 469 A.2d 120, 123 (1983).

Courts have classified this doctrine as a manifestation of the "no-duty" rule in premises liability cases. See, e.g., Berman v. Radnor Rolls, Inc., 374 Pa. Super. 118, 542 A.2d 525, 531 (1988). Section 343A of the RESTATEMENT further clarifies:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known *or* obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Carrender, 469 A.2d at 123 (quoting RESTATEMENT (SECOND) OF TORTS, § 343A) (emphasis added).

Consequently, there are two separate and disjunctive lines of inquiry on this "no-duty" issue: one subjective and the other objective.[1] Berman, 542 A.2d at 133.

---

[1] The Plaintiff's counsel contends that "[u]ltimately, Defendant's argument operates as an assumption of risk defense." Pl.'s Br. Opp'n, at 12. This contention lacks precision, and blurs the legal and conceptual distinction between a traditional assumption of the risk defense and its "no-duty" corollary. See Berman, 542 A.2d at 531. Under traditional assumption of the risk, the defendant initially owes the plaintiff a duty of care. The defendant subsequently is relieved of that duty and the resulting liability for breach because the plaintiff knowingly assumes the risks

The subjective inquiry concerns whether the hazard is "known" to the invitee. Carrender, 469 A.2d at 124; RESTATEMENT (SECOND) OF TORTS, § 343A. The objective inquiry concerns whether the hazard is "obvious" to the reasonable person in the plaintiff's situation. Carrender, 469 A.2d at 124; RESTATEMENT (SECOND) OF TORTS, § 343A comment b. "Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." Id., 469 A.2d at 124.

The Court first considers the subjective inquiry: whether the danger was "known" to Devlin.

### 1) The Plaintiff Did Not "Know" of the Danger

For a danger to be "known" to an invitee, it must "not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." Carrender, 469 A.2d at 124 (quoting RESTATEMENT (SECOND) OF TORTS, § 343A, comment b). Where reasonable

---

attendant to his actions, while conscious of the accompanying dangers and possible adverse consequences. See id.

In contrast, the objective component of the no-duty doctrine that is squarely at issue this case does not charge the defendant with an initial duty. Because the risk itself is so open and obvious to a reasonable person in the plaintiff's situation, the defendant has no duty to the plaintiff "regardless of whether defendant could successfully raise the assumption of the risk defense." Id. No duty cases "place the burden of proof on the plaintiff since the duty of the defendant is an element of plaintiff's prima facie case." Id. at 532.

minds could not disagree that a plaintiff who understood and appreciated the specific risks of harm inherent in an activity, nonetheless engaged in that activity, a court may find as a matter of law that the defendant owed no duty of care to the plaintiff and is therefore not liable. Howell v. Clyde, 533 Pa. 151, 620 A.2d 1107, 1113 (1993). The inquiry considers substantially the same criteria as the traditional assumption of the risk doctrine. See, e.g., Berman, 542 A.2d at 532.

For example, in Howell v. Clyde, 533 Pa. 151, 620 A.2d 1107, 1113 (1993), the Pennsylvania Supreme Court found that a plaintiff knowingly assumed the risks of lighting fireworks such that the defendant was not liable for plaintiff's injury. In that case, that plaintiff voluntarily participated in the act of igniting fireworks, "a dangerous activity, knowing that the ignition of gunpowder is inherently dangerous and might cause injury to himself or others." Howell, 620 A.2d at 1113. Because the plaintiff was aware of the dangers inherent in the activity and appreciated the severity of the risk to which he unfortunately succumbed, the danger was "known" to the plaintiff and the defendant was relieved of liability. Id.

Similarly, in Carrender v. Fitterer, 503 Pa. 178, 469 A.2d 120, 124 (1983), the court held that a property owner owed no duty to a patient either to take precaution against or to warn the patient of an isolated patch of ice in the parking

9

lot, because the danger was both known to the plaintiff and "obvious to a reasonably attentive invitee." In that case, testimony established that the plaintiff was aware that she parked next to a sheet of ice and appreciated the risk of traversing it. Carrender, 469 A.2d at 124. There were also a "number of clear, convenient spaces available" that were not subject to icy hazards, but the plaintiff chose to knowingly proceed in the face of danger and consequently relieve the defendant of liability. Id.

Home Depot does not present evidence indicating that Devlin actually knew and appreciated the danger present at the time of the incident. Indeed, the Defendant alleges that "[t]here is no evidence that the Decedent ever looked down." Def.'s Br., at 6 n. 2. Unlike the plaintiff in Howell, who actively participated in igniting fireworks, and the plaintiff in Carrender, who was aware of the presence of ice, Home Depot fails to demonstrate that Devlin could have "known" of the risk the forklift presented, let alone appreciate the gravity of the threatened harm. See Howell, 620 A.2d at 1113; Carrender, 469 A.2d at 124.

Given the paucity of evidence, Home Depot is not entitled to summary judgment on this point. See Carrender, 469 A.2d at 124. Therefore, Home Depot's argument centers on the objective component of this manifestation of the no-duty rule.

> 2) Reasonable Minds Could Differ Whether this Danger Was Obvious to a Reasonable Man in Similar Circumstances

Under this formulation of the no-duty rule, a danger is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." Carrender, 469 A.2d at 123. If the danger is obvious to this reasonable man, then the possessor of land is not liable for harm caused by that danger to the reasonable man, "unless the possessor should anticipate the harm despite such knowledge or obviousness." Carrender, 469 A.2d at 123 (quoting RESTATEMENT (SECOND) OF TORTS, § 343A).

For example, in Campisi v. Acme Markets, Inc., 915 A.2d 117, 121 (2006), the court held that a grocery store had no duty to protect or warn a customer from the risk of injury from a guide cane used by a blind employee to walk about the store. Applying a reasonable person standard under RESTATEMENT § 343A, the court stated it "would consider a *customer's* duty of ordinary care to include looking for obstacles before exiting an aisle." Id. at 121.

In Antolik v. Camelback Ski Corp., Inc., 2012 Pa. Dist. & Cnty. Dec. LEXIS 182, at *11 (Pa. Cnty. Ct. 2012), the court held that the defendant owed no duty to a plaintiff who slipped in a puddle of water that presented an obvious

danger. The plaintiff entered a woman's locker room, observed a caution sign indicating the floor was wet, anticipated the presence of water, adjusted her course to avoid it and other people on the walkway, but nevertheless slipped in a pool of water that was "of a significant size and depth." Antolik, 2012 Pa. Dist. & Cnty. Dec. LEXIS 182, at *9. The court found that reasonable minds could not differ that the water was not only a known condition but also an obvious one, because of the sign warning of water as well as the visible presence of the puddle itself. Id. at *11.

In Carrender, the court also found that the ice patch in the parking lot was open and obvious to a reasonable person in the plaintiff's situation. Carrender, 469 A.2d at 123. The ice "was obvious to a reasonably attentive invitee." Id. at 124.

In the case before the Court, however, the evidence is not so clear that "reasonable minds *could not differ*" as to the fact that the forklift was an obvious hazard to a reasonable man in the same circumstances as Devlin. Id., 469 A.2d at 124 (emphasis added). As Devlin approached the store with his daughter, the forklift was idling to the right of the entrance. It was a large machine making noise with the engine running. Several other younger patrons successfully navigated the passage that led to the entrance to the store between the forklift and adjacent

pallets. Unlike in Antolik, however, there was no sign or anything in the vicinity other than the forklift itself to warn an approaching elderly man of impending danger. See Antolik, 2012 Pa. Dist. & Cnty. Dec. LEXIS 182, at *9.

The security footage of the incident displays two particular circumstances that shed doubt on the obviousness of the hazard to a reasonable man in the same circumstances as Devlin. First, the particular fork of the forklift that Devlin actually tripped on was situated in the shadow of the forklift, such that reasonable minds *could* differ on whether it was obscured from an elderly man's vision. See Carrender, 469 A.2d at 124. Second, in the moments before the fateful incident, the footage shows that Devlin's daughter was walking approximately one pace ahead of Devlin, between him and the forklift they were approaching. Reasonable minds could differ as to whether her path contributed to masking the danger from a reasonable senescent man in Devlin's situation so that he would not see the fork. See id.

Although in many cases with a plaintiff in different circumstances, this sort of incident could present a situation that is so clearly open and obvious that no reasonable minds could disagree as to the conclusion. See, e.g., Campisi, 915 A.2d at 121; Carrender, 469 A.2d at 123. The Court does not believe that this one of them. Ultimately, there are factual ambiguities that are appropriate to submit to a

jury.

### C. Punitive Damages Claim Dismissed

Home Depot argues that, if the tort claim survives summary judgment, the punitive damages claim should be dismissed, because Devlin cannot establish facts necessary to support such a claim. This argument is renewed from Home Depot's Motion to Dismiss, which was denied without prejudice on this point by Judge Mariani. See Mem. Op., Oct. 25, 2012, ECF No. 10.

An award of punitive damages in a diversity case is governed by state law. Bridges v. Ashland Borough, 10-CV-1065, 2011 WL 5826676 at *5 (M.D. Pa. 2011) (Munley, J.). "[P]unitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." SHV Coal, Inc. v. Cont'l Grain Co., 526 Pa. 489, 587 A.2d 702, 705 (1991). "Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed." Phillips v. Cricket Lighters, 584 Pa. 179, 883 A.2d 439, 445 (2005).

Punitive damages "are not awarded to compensate the plaintiff for her damages but rather to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious." Id. at 446. To be liable for punitive damages based on reckless indifference, a defendant's conduct must

create an unreasonable risk of physical harm to another that "is substantially greater than that which is necessary to make his conduct negligent."  Montgomery v. Mitsubishi Motors Corp., CIV.A. 04-3234, 2006 WL 1030272, at *2 (E.D. Pa. Apr. 19, 2006) (citing Phillips, 883 A.2d at 445).  Examples of such outrageous and reckless conduct include driving while intoxicated,[2] racing cars on roadways,[3] and shooting bullets into an automobile.[4]

    Devlin does not present material facts to survive summary judgment on this issue.  There is simply no indication that the Defendant's conduct was "particularly egregious" or the result of "evil motive."  Phillips, 883 A.2d at 445–46.  Although Devlin alleges that the plaintiff may not have been following all established procedures for operating the forklift or that those procedures were insufficient to guard against this risk, this conduct would result in a breach of an ordinary duty of care.  It would not go "beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured."  Hutchinson v. Lundy, 582 Pa. 114, 870 A.2d 766, 770 (2005).  As the Plaintiff produces no evidence indicating a genuine dispute of

---

[2] Focht v. Rabada, 217 Pa. Super. 35, 268 A.2d 157 (1970).

[3] Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648 (1959).

[4] Rhodes v. Heberling, 306 Pa. Super. 35, 451 A.2d 1378 (1982).

material facts on this point, it is appropriate for summary judgment and Devlin's claim for punitive damages is dismissed.

## III. CONCLUSION

In accordance with the reasoning above, the Defendant's Motion for Summary Judgment is DENIED in part and GRANTED in part. The Plaintiff's punitive damages claim is dismissed, but the tort claims survive for trial.

An appropriate Order follows.


BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge